FARBWERKE-HOECHST CO. *v.* UNITED STATES (No. 1534).[1]

1. HANSA YELLOW, HOW DUTIABLE.

Hansa yellow, an insoluble dry coloring matter derived from coal tar, is dutiable under paragraph 20, tariff act of 1913, " coal-tar dyes or colors, not specially provided for in this section." This paragraph does not exclude from its operation coal-tar pigments or coal-tar lakes (if any such there be), or insoluble coloring matter derived from coal tar.

2. ALL PARTS OF STATUTE TO BE GIVEN FIELD FOR OPERATION.

To hold all insoluble coloring matters, lakes, or pigments which may be derived from coal tar unclassifiable under paragraph 20, tariff act of 1913, would practically limit the scope of the paragraph to coal-tar dyes, leaving nothing dutiable as coal-tar colors.

3. PIGMENTS—LAKES.

A pigment is a special kind of coloring matter, and a lake is a special kind of pigment. " Coal-tar colors," then, enumerates coal-tar pigments and coal-tar lakes (if any such there be), and this enumeration in paragraph 20, tariff act of 1913, is a narrower one than that of pigments and lakes generally in paragraph 63.

[1] Reported in T. D. 36121 (30 Treas. Dec., 150).

United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7665 (T. D. 35065). [Affirmed.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise invoiced as Hansa yellow, 5–G, in lumps, imported in 1909, was returned by the appraiser as a coal-tar color, provided for in paragraph 15 of the tariff act of 1909, but as the importation was not withdrawn from warehouse until after October 3, 1913, it was assessed for duty by the collector of customs at 30 per cent ad valorem, under the provisions of paragraph 20 of the tariff act of 1913, which paragraph reads as follows:

20. Coal-tar dyes or colors, not specially provided for in this section, 30 per centum ad valorem.

The importers protested that Hansa yellow was dutiable at 15 per cent ad valorem as a product or preparation of coal tar under the provisions of paragraph 21, or at the same rate as a pigment under paragraph 63, or at 20 per cent ad valorem as a color lake under the latter paragraph, or at one or the other of said rates by similitude under the provisions of paragraph 386.

Paragraph 21 and that part of paragraph 63 of the act of 1913, upon which the importer relies, read as follows:

21. All other products or preparations of coal tar, not colors or dyes, not specially provided for in this section, 15 per centum ad valorem.

63. Enamel paints and all paints, colors, pigments, * * * whether crude, dry, mixed, or ground with water or oil or with solutions other than oil, not specially provided for in this section, 15 per centum ad valorem; * * * all color lakes, whether dry or in pulp, not specially provided for in this section, 20 per centum ad valorem.

The Board of General Appraisers overruled the protests and the importers appealed.

Hansa yellow, as appears from the testimony in the case, is an insoluble dry coloring matter derived from coal tar and is manufactured into paints or into printer's or lithographic inks by grinding it with varnish, oil, or other vehicle, fitting it for application to surfaces.

The appellant contends, first, that the merchandise is a color lake and that it is therefore dutiable at 20 per cent ad valorem under the last clause of paragraph 63, which provides for "all color lakes, * * * not specially provided for"; second, that if the merchandise can not be regarded as a lake it must be classified as a pigment, not specially provided for, and dutiable at 15 per cent ad valorem under the first clause of paragraph 63.

Both of these contentions are predicated upon the assumption that it was the intention of Congress to exclude from the operation of paragraph 20 those coal-tar colors which are either pigments or lakes, and to make coal-tar pigments and coal-tar lakes dutiable under the provisions of paragraph 63. To that interpretation we must decline to give our approval. According to the standard dictionaries and the authorities apparently relied upon by the Government and the importer, a pigment is an insoluble coloring matter of mineral, animal or vegetable origin, which, when mixed with oil, varnish, or other appropriate liquid vehicle, forms a paint suitable for the coloring of surfaces. (See " Pigment," Century, Standard, Webster's International, and Oxford dictionaries.)

A pigment is, therefore, a special kind of coloring matter and a lake is a particular species of pigment. Coal-tar pigments and coal-tar lakes, if any such there be, are consequently, coal-tar colors, and from that it ensues that such pigments and lakes are enumerated and provided for in paragraph 20. See Merck *v.* United States (6 Ct. Cust. Appls., 41; T. D. 35315). Appellant urges in effect, however, that as pigments and lakes are a class, kind, or species of colors, preference must be given to their enumeration as such. That claim would probably be well founded if the general designation " colors " were brought into competition with the specific designation " pigments " or " lakes." But that is not this case. Here the enumeration " coal-tar colors," which must necessarily be construed as an enumeration of coal-tar pigments and coal-tar lakes, is contrasted with the provision for pigments and lakes in general, and must, we think, be accepted as the narrower designation. If we hold that coal-tar pigments and coal-tar lakes are more specifically provided for by the provision for pigments and lakes in paragraph 63, then, by the same token, we must hold that coal-tar stains are more specifically provided for by the designation " stains " in the same paragraph. But as any such conclusion as that would result in practically limiting the scope of paragraph 20 to coal-tar dyes and in reducing the provision for coal-tar colors to the efficiency of mere surplusage, it is evident that the position taken by the appellants ought not to be sustained, especially when it is clear that the competing provisions are open to a construction which will give effect to the language of both.

It is argued, however, that paragraph 20 was designed to cover soluble coal-tar colors only, and that it was not intended to include insoluble colors, which belong to the paint and not to the dye class of colors. In support of that interpretation it is asserted that the color provisions are so grouped in the law as to evidence a design to keep dyes and colors of the dye class separated from paints and colors of the paint class. We think that if any conclusion is to be drawn from

the grouping of colors it rather makes for the theory that Congress intended to provide for coal-tar colors in that part of the act which it saw fit to assign to coal-tar products and not in the later provisions, which seem to have been set apart for those colors derived largely, if not exclusively, from other sources than coal tar. Paragraphs 51, 52, 53, 54, 55, 56, 57, 59, 60, 61, and 62 provide for colors and pigments which are decidedly not of coal-tar origin, and those provisions are immediately followed by the provision which the importers claim should have been applied to the importation by the collector. Separated from these paragraphs by various provisions for goods which are not coloring matters at all we find coal-tar dyes or colors, coal-tar distillates, and coal-tar products or preparations provided for in paragraphs 20, 21, 22, and 23. Certainly, from no such arrangement of the tariff act as that can it be logically deduced that insoluble coal-tar colors were not intended to be provided for in paragraph 20. Moreover, there is nothing in the statute or in the decisions to which our attention has been called which would warrant us in excluding from the designation " coal-tar colors " such coal-tar colors as are insoluble.

It is true, as claimed by the importers, that there is no provision in any of the tariff acts prior to the act of 1913 for color lakes as such, but from that it can scarcely be inferred that " color lakes " has a wider signification than " lakes," and much less that the modification of the term " lakes " by the adjective " color " indicated a legislative intent to exclude coal-tar lakes, if any such there be, from the provision for coal-tar colors. But however that may be, there is, in our opinion, one conclusive answer to this line of argument, and that is that the evidence set out in the record does not show that the merchandise in controversy is a lake. According to the Government, a lake is an organic coloring matter combined with a metallic base, and to constitute a lake metallic or mineral matter must always be present. According to the importers, a lake may be either an organic coloring principle combined with a metal or mineral base or a basic dye combined with an organic acid. As a corollary to that proposition it is further claimed that the term " lakes " has come to mean all organic artificial insoluble pigments produced by any method and used for paint. No evidence, however, was produced showing that either a metallic base or an organic acid was a factor in the production of Hansa yellow. Whether, therefore, a lake be considered as an insoluble organic coloring matter combined with a metallic base or a basic dye combined with an organic acid, it is evident that the make-up of the importation, in so far as shown by the record, would not justify us in holding that Hansa yellow is a lake either under the definition contended for by the Government or under that claimed by the importers.

Some of the witnesses for the importers did testify that while the term "lakes" was originally confined to insoluble coloring matters produced by combining a soluble organic color with a metallic base, it had come to mean in the last five or six years any organic insoluble color. It was not pretended, however, by any of these witnesses that that extension of the original meaning of "lake" was brought about by trade usage, and we find nothing in any of the recognized authorities cited which would lead us to conclude that popular usage has at any time sanctioned such a use of the word. It is entirely probable that chemists and manufacturers of colors have given the designation "lakes" to pigments which do not meet the popular understanding of the term, but no such usage as that is sufficient to alter its commonly accepted signification.

When Congress came to pass paragraph 20 it had, in our opinion, in mind all the coal-tar dyes and coal-tar colors, and intended that every coal-tar dye and color should be covered just as effectively as if it had been mentioned by name, save and except such coal-tar dyes and colors as were elsewhere provided for by name or were otherwise more specifically provided for as such. As we construe the designation "coal-tar colors" in paragraph 20 to be the equivalent of the enumeration *eo nomine* of all classes and kinds of coal-tar colors not otherwise provided for, we must decide that, whether the importation be regarded as a coal-tar lake or a coal-tar pigment, it is covered more specifically by the enumeration of paragraph 20 than by the designations "pigments" and "lakes" of paragraph 63, which are broad enough to cover not only coal-tar pigments and lakes but all pigments and lakes, whatever their origin.

Inasmuch as the designation "coal-tar colors" covers coal-tar pigments and coal-tar lakes, if any such there be, the goods are enumerated, and consequently they are not subject to classification by similitude.

Paragraph 21 can not be applied to the merchandise, for the reason that that paragraph expressly excludes from its operation colors and dyes.

The decision of the Board of General Appraisers is *affirmed*.